UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES HAROLD CHADWICK, II,

              Petitioner,

vs.                                  Case No. 3:14-cv-1488-J-39MCR

SECRETARY, DOC, et al.,

              Respondents.

_____

**ORDER**

**I. STATUS**

Petitioner James Harold Chadwick, II, an inmate of the Florida penal system, challenges a 2008 (Baker County) conviction for DUI manslaughter (count one), DUI resulting in serious bodily injury (counts two and three), driving while license suspended or revoked with death or serious bodily injury (count four), and felony DUI - fourth or subsequent violation (count five). He filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). He is proceeding on an Amended Petition (Doc. 7). He also relies on an Amended Memorandum to Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2254 (Amended Memorandum) (Doc. 8). He raises three grounds in the Amended Petition. The Court will address these grounds, see Long v. United States, 626 F.3d 1167, 1169 (11th Cir. 2010) ("The district court must resolve all claims for relief raised on collateral review, regardless of whether relief is granted or denied.") (citing Clisby v. Jones, 960 F.2d

925, 936 (11th Cir. 1992) and <u>Rhode v. United States</u>, 583 F.3d 1289, 1291 (11th Cir. 2009)), but no evidentiary proceedings are required in this Court.

Respondents filed a Response to Amended Petition for Habeas Corpus (Response) (Doc. 18). In support of their Response, they provide Exhibits (Doc. 18).[1] Petitioner filed a Reply Brief to State's Response (Reply) (Doc. 19). <u>See</u> Order (Doc. 15). Respondents calculate that the Petition is timely. Response at 4-5. Respondents provide a comprehensive rendition of the procedural history of the case, and it will not be repeated here. <u>Id</u>. at 1-5.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of the Petition; therefore, this Court's review is highly deferential and certainly greatly circumscribed. <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011). <u>See</u> <u>generally</u> 28 U.S.C. § 2254. Since AEDPA governs the petition and limits the scope of this Court's review, the state-court decisions must be given the benefit of the doubt:

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas

---

[1] The Court hereinafter refers to the Exhibits as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix. Otherwise, the page number on the particular document will be referenced. Also, the Court will reference the page numbers assigned by the electronic docketing system where applicable.

relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[2] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011). . . . .

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [Harrington v. Richter, 562 U.S. 86, 102 (2011)] (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75, 123 S.Ct. 1166 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253–54 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014).

---

[2] "This presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for the Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 133 S.Ct. 1625 (2013).

The first step in applying AEDPA deference is to identify the last state court decision that evaluated the claim on its merits. <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016).[3] Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). If there is reason to believe some other explanation for the state court's decision is more likely, the presumption, in limited circumstances, may be rebutted. <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)); <u>see also</u> <u>Johnson v. Williams</u>, 133 S.Ct. 1088, 1096 (2013) (finding the <u>Richter</u> presumption strong, but not irrebuttable).

If the last state court's merit-based decision is unaccompanied by an explanation, the petitioner must show there was no reasonable basis for the state court to deny relief. <u>Richter</u>, 562 U.S. at 98. This is not an easy task; "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>. at 102. Applying AEDPA deference, it is this

---

[3] As suggested in <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir. 2017), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227 (11th Cir. 2016) (en banc), <u>cert</u>. <u>granted</u>, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

Court's duty to "determine what arguments or theories supported or, as here, could have supported, the state court's decision;" and then the Court "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Richter, 562 U.S. at 102.

The § 2254(d) standard is difficult to meet, serving as a guard against extreme malfunctions in the state criminal process, but not as a means of error correction that are adequately addressed through the state appellate review process. This high hurdle to obtain issuance of the writ is overcome if a state prisoner shows that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017) (recognizing the foundational principle of the federal system that state courts are considered adequate forums to seek vindication of federal rights, thus limiting federal habeas relief to extreme malfunctions in the state system) (quotations and citations omitted).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Of note, ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>See</u> <u>id</u>. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

This Court recognizes that,

in a post conviction challenge to a guilty plea:

> [T]he representations of the
> defendant, his lawyer, and the
> prosecutor at [the plea] hearing, as
> well as any findings made by the
> judge accepting the plea, constitute
> a formidable barrier in any
> subsequent collateral proceedings.
> Solemn declarations in open court
> carry a strong presumption of
> verity. The subsequent presentation
> of conclusory allegations
> unsupported by specifics is subject
> to summary dismissal, as are
> contentions that in the face of the
> record are wholly incredible.
>
> Blackledge v. Allison, 431 U.S. 63, 73-74, 97
> S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)
> (citations omitted); see also United States v.
> Gonzalez-Mercado, 808 F.2d 796, 799-800 and n.
> 8 (11th Cir. 1987) (while not insurmountable,
> there is a strong presumption that statements
> made during a plea colloquy are true, citing
> Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2
(N.D. Fla. May 17, 2011) (Report and Recommendation), report and
recommendation adopted by Bryant v. McNeil, No. 4:09CV22-SPM/WCS,
2011 WL 2434087 (N.D. Fla. June 16, 2011).

## IV.  THE PLEA

To provide historical context to Petitioner's three grounds
for habeas relief, the Court provides an extensive summary of the
plea proceeding and its aftermath.  Petitioner was charged by an
amended information with DUI manslaughter (count one), DUI
resulting in serious bodily injury (counts two and three), driving
while license suspended or revoked with death or serious bodily
injury (count four), and felony DUI - fourth or subsequent

violation (count five).  Ex. A at 6-8.  On the day of jury selection, October 13, 2008, Petitioner tendered a plea of nolo contendere to all of the counts as charged, except count four, to which he pled to the lesser-included offense of misdemeanor level driving with a suspended license.  Ex. B at 2-15.  The plea agreement included an agreed term of imprisonment of twenty years, with a scoresheet range of 241 months (twenty years and one month), to a maximum sentence of thirty-one years.[4]  Ex. A at 9-15; Ex. B at 5-7.

After an extended plea colloquy, the court accepted the plea, finding the plea freely and voluntarily rendered.  Ex. B at 11. The state presented a factual basis for the plea, with the defense not conceding as to every allegation, but admitting that there is enough evidence, if believed by a jury, to support each count.  Id. at 11-14.

The prosecutor provided the following factual basis for the plea:

> The state is prepared to prove beyond a reasonable doubt that on the evening -- approximately 9:30 p.m. on June 2, 2007, Mr. Chadwick operated a motor vehicle in Baker County.  He was going westbound on 228 near the area of Deerfield Road.  Coming the other way was another vehicle.  It was occupied by three young women.  They are the victims in this case.

_____

[4]  In addition to Petitioner, the defense attorney, the prosecutor, and the judge signed the plea form.  Ex. A at 12-13.

As the young women approached that intersection, Mr. Chadwick swerved into their lane, causing a collision. That collision resulted directly in the death of Jessalyn Combs, a 19-year-old human being, and the serious bodily injury of the driver, Angelica Nobles, and the rear seat passenger, Summer Heirs. Without going into the nature of their injuries, let it suffice that each suffered either permanent scarring, permanent disability, permanent pain, or all of those things, and still do.

The State would present evidence in a number of forms. One would be the sworn Mirandized statement of Mr. Chadwick, in which he admits a number of things: One, that he was consuming alcohol shortly prior to the crash; that he had had beer; that he had had three to four beers, which may be in some respects refuted by our expert witness from FDLE, who would say his blood alcohol content of .129 is more consist[ent] with five drinks or five beers; that he was operating the motor vehicle; that he was alone in the motor vehicle, and even that shortly prior to the crash, his attention was distracted to the power lines on the -- from his point of view, the left-hand side of 228 as he was proceeding westbound.

We would further prove, both through documentation, business records, his driving record, that his drivers license was at the time suspended or revoked for a number of reasons, one of which is his prior DUI history. And we would prove beyond any doubt that he had three prior DUI convictions in that period of time, which makes this offense a felony DUI as the fourth or subsequent violation. We would prove with regard to the driving license charge as well not only that he admitted he knew his drivers license was suspended, but that he had received the required statutory notice of that suspension.

So in summary, we would prove Counts I, II, and III, the DUI both, by proving his blood alcohol level substantially over .08.

> We would show his impairment due to the
> testimony of various witnesses, as well as
> photographs that show beyond any doubt that
> the crash occurred in the eastbound lane; not
> his lane, but the girls' lane of travel; that
> he had to have been in their lane; not his;
> that he almost surely misjudged the girls'
> rate of speed, as well as their location, and
> tried to make it into the -- the intersecting
> road and misjudged and thereby caused the
> crash.  And I think I've covered Counts IV and
> V sufficient for the record.  Thank you very
> much.

Id. at 11-13.

The court found the plea freely and voluntarily submitted to the court and determined there was a factual basis for the plea. Id. at 14.  With that, the court adjudicated Petitioner guilty, but delayed the sentencing until afternoon to accommodate the victim impact witnesses and Petitioner's needs.  Id. at 14, 31.  In conclusion, the court said: "That that's what you wanted me to do. So at this time, I have taken your plea.  I've qualified your plea. I have adjudicated you.  I will tell you, Mr. Chadwick, in doing that, that it closes the door on your right to a jury trial."  Id. Petitioner confirmed that he understood that, and he accepted it. Id. at 14-15.

This Court first looks to the plea colloquy.  Upon review, the state court swore Petitioner in and allowed defense counsel to ask Petitioner a series of questions.  Id. at 3.  Defense counsel initially inquired about Petitioner's education and ability to read and write the English language.  Id.  Petitioner assured the court that he could read and write the English language.  Id.  He

- 10 -

responded affirmatively to initialing and signing the plea form after his attorneys had gone over each paragraph with him. _Id_. at 3-4. Defense counsel asked: "I have gone over with you and provided you police reports, the transcript of depositions, we've watched some DVDs together, we've looked at photographs together, listened to statements together. Is that all correct?" _Id_. at 4-5. Petitioner responded in the affirmative. _Id_. at 5. After acknowledging the maximum prison sentence of thirty-one years, Petitioner expressed his satisfaction with counsel. _Id_. at 5-6. Petitioner confirmed that he was not under the influence of any drugs, alcohol or medication, he did not have any physical limitations, and he had adequate time to consider the plea offer. _Id_.

The court asked Petitioner if he was comfortable with his decision, making sure that "what you're doing is freely and voluntarily done." _Id_. at 8. Petitioner confirmed that it was. _Id_. The court reminded Petitioner that it was prepared to offer him a jury trial, if he so desired, and there was a jury waiting in the hallway _Id_. at 8-9. Petitioner confirmed again that he was not under the influence of any intoxicants, including any medication. _Id_. at 9. He asked to be sentenced as quickly as possible. _Id_. at 10. The court asked if there had been any other promises made, other than the plea agreement, and Petitioner responded in the negative. _Id_. at 10-11.

Upon returning to the courtroom for sentencing, defense counsel made an ore tenus motion to withdraw the plea. <u>Id</u>. at 17. Petitioner told the court: "I just felt like that I was pressured into signing that this morning with Mr. Nelson, Mr. Maguire. They just, you know constantly wanting me to sign it, wanting to plea out to it. And I was wondering if –- if I can appeal this or something. <u>Id</u>. Petitioner said he was "all confused up." <u>Id</u>. at 19. Petitioner admitted that his mother was present before he signed the plea agreement and he had an opportunity to speak with her. <u>Id</u>. at 19-20. After asking Petitioner's mother a series of questions, the court found that nothing changed from the morning to the afternoon. <u>Id</u>. at 23-24. Accepted at Petitioner's request, the court found the plea freely and voluntarily entered. <u>Id</u>. at 24.

Defense counsel asked the court to appoint counsel to represent Petitioner on his motion prior to sentencing as his lawyers ethically could not argue the motion. <u>Id</u>. at 32. The court entered an order appointing conflict counsel to reduce the motion to written form. <u>Id</u>. at 33.

Conflict counsel filed a Motion to Withdraw Plea. Ex. A at 27-28, 32-38. Petitioner filed a pro se Motion to Withdraw Plea. <u>Id</u>. at 29-31. The state responded. <u>Id</u>. at 39-43. The court dismissed the pro se motion. <u>Id</u>. at 44. After conducting an

evidentiary hearing,[5] the court denied the Motion to Withdraw Plea. Id. at 45-48. After noting that the record showed no indication that Petitioner had "anything other than a willingness to go forward with the plea[,]" the court found that the testimony at the evidentiary hearing supported this assessment of the plea. Id. at 46. Defense counsel testified that Petitioner "had no hesitation about entering the plea." Id. The court concluded that any pressure Petitioner felt was "completely internal." Id. The court recognized that although defense counsel advised Petitioner to accept the plea offer, counsel was prepared for trial and never threatened to withdraw. Id. After assessing the record and the evidentiary hearing testimony, the court found that "advising a defendant of his chances at trial and the possible sentence that he could face if he lost is not coercion." Id. at 46-47. The court was convinced that defense counsel did not misadvise, threaten, or coerce Petitioner into entering the plea. Id. at 47.

### V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. Ground One

In his first ground, Petitioner claims that the blood draw was not conducted in conformity with the rules governing the collection of blood specimens. Amended Petition at 5. He bases this argument on the fact that the Emergency Medical Technician (EMT) stated he used an alcohol swab on Petitioner before drawing blood. Id.

---

[5] The evidentiary hearing transcript for the motion to set aside the plea is found in the record. Ex. C at 16-54; Ex. D.

In their Response, Respondents counter that ground one is not cognizable in a federal habeas corpus proceeding because it is a state law issue, not a federal claim. Response at 5. It is not the province of a this Court to reexamine state-court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Upon review, this ground certainly involves statutory interpretation of a state law by state courts, but the writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001). The Eleventh Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available. See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).

As noted by a sister federal court when addressing a similar claim concerning the admission of blood alcohol and toxicology test results:

> to the extent [Petitioner's] claim here rests on state law grounds concerning the trial court's admission of evidence, it is not sufficient to warrant review or relief by a federal court. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); see also Link v. Tucker, 870 F.Supp.2d 1309, 1325 (N.D. Fla. 2012) (Order adopting Report and Recommendation to deny § 2254 petition: "It is well established that a challenge to a state trial court's ruling on a

question of state law, for example, an
evidentiary ruling, is cognizable on federal
habeas only to determine whether the alleged
error was so critical or important to the
outcome of the trial to render the trial
fundamentally unfair."); Jones v. McNeil, No.
4:09cv54-RH/WCS, 2013 WL 5504371, at *7 (N.D.
Fla. Oct. 1, 2013) ("A federal petitioner
cannot pursue a Due Process claim when the
underlying issue was raised in state court
only as a state evidentiary issue without
asserting a federal constitutional issue.").

Berry v. Buss, No. 4:11-CV-00340-MP-CAS, 2014 WL 3867590, at *7

(N.D. Fla. Aug. 6, 2014). As such, the federal habeas corpus court

will be bound by the Florida court's interpretation of its own laws

unless that interpretation breaches a federal constitutional

mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992)

(per curiam), cert. denied, 504 U.S. 944 (1992).

Because ground one presents an issue that is not cognizable in

this habeas proceeding, this ground cannot provide a basis for

federal habeas corpus relief. Here, there is no breach of a

federal constitutional mandate. Therefore, Petitioner is not

entitled to habeas relief.

Alternatively, Respondents assert that the claim raised in

ground one was waived by the plea. Response at 6. In considering

this ground, the Court's scope of review is quite restricted

because of the finality of the plea proceeding:

The Supreme Court has given finality to guilty
pleas by precluding claims of constitutional
deprivations occurring prior to entry of the
plea. See Tollett v. Henderson, 411 U.S. 258,
267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).
Following the entering of a guilty plea on the

> advice of counsel, the scope of a federal
> habeas corpus inquiry is limited to whether
> the plea was voluntarily and intelligently
> made; an independent inquiry as to the
> existence as such of any antecedent
> constitutional infirmity is improper.
> <u>Tollett</u>, <u>supra</u> at 266. Only an attack on the
> voluntary and knowing nature of the plea can
> be sustained. <u>United States v. Broce</u>, 488
> U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927,
> (1989) ("when the judgment of conviction upon
> a guilty plea has become final and the
> offender seeks to reopen the proceeding, the
> inquiry is ordinarily confined to whether the
> underlying plea was both counseled and
> voluntary.)

<u>Middleton v. Sec'y, Dep't of Corr.</u>, No. 8:06-cv-217-T-17TBM, 2008 WL 450007, at *4 (M.D. Fla. Feb. 15, 2008) (footnote omitted). <u>See</u> <u>Carter v. Collins</u>, 918 F.2d 1198, 1220 n.1 (5th Cir. 1990) (finding the law applicable to a guilty plea applicable to a nolo contendere plea since a nolo plea is treated as an admission of guilt); <u>see also</u> <u>Harley v. Sec'y, Dep't of Corr.</u>, No. 8:08-cv-854-T-23TBM, 2012 WL 682744, at *8 n.7 (M.D. Fla. Mar. 2, 2012) (finding same).

It is axiomatic that, and

> [a]ccording to <u>Tollett v. Henderson</u>, 411 U.S.
> 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235
> (1973), a guilty plea waives a[ll]
> non-jurisdictional defects:

> > [A] a guilty plea represents a break
> > in the chain of events which has
> > preceded it in the criminal process.
> > When a criminal defendant has
> > solemnly admitted in open court that
> > he is in fact guilty of the offense
> > with which he is charged, he may not
> > thereafter raise independent claims
> > relating to the deprivation of
> > constitutional rights that occurred

> prior to the entry of the guilty
> plea.

United States v. Winslow, Nos. 8:05-cr-377-T-23EAJ, 8:07-cv-683-T-23EAJ, 2007 WL 2302277, at *2 (M.D. Fla. Aug. 8, 2007).

Here, this pre-plea non-jurisdictional claim is waived and precluded by entry of the plea. Lipscomb v. Sec'y, Dep't of Corr., No. 8:06-cv-58-T-17EAJ, 2008 WL 434881, at *4 (M.D. Fla. Feb. 14, 2008). "Because a guilty [or nolo] plea forfeits all claims (other than jurisdictional challenges), including both substantive claims and purported failings of counsel that occurred before entry of the plea," United States v. Winslow, 2007 WL 2302277, at *2, Petitioner's claim concerning the statutorily non-compliant blood draw raised in ground one is due to be denied.

Finally and alternatively, even if this claim were cognizable on federal review, Petitioner is not entitled to habeas relief. To the extent this issue was addressed by the state courts, the circuit court found that the state complied with Florida law. Ex. K at 421 ("Because the blood was properly drawn, counsel did not err by failing to challenge its admissibility."). The appellate court affirmed. Ex. N. The state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in the light of the evidence presented in state court proceedings. Thus, Petitioner is not entitled to habeas relief on

ground one.  Deference under AEDPA should be given to the state court's decision.

## B.  Ground Two

In his second ground, Petitioner asserts that he received the ineffective assistance of counsel because his counsel failed to move to suppress the blood alcohol test results, and even failed to investigate the facts and circumstances of the blood draw.  Amended Petition at 6; Amended Memorandum at 19.  Petitioner claims that but for this ineffectiveness, the state would have been left with only the driver's license violations.  Amended Petition at 6. Petitioner exhausted this ground by raising it in his Rule 3.850 motion, the circuit court denied relief, and the First District Court of Appeal (1st DCA) per curiam affirmed.  Ex. K; Ex. N.

Upon review of the circuit court's order, it set forth the applicable two-pronged <u>Strickland</u> standard as a preface to addressing the claims of ineffective assistance of counsel.  Ex. K at 419.  After setting forth the applicable standard of review, the court provided this explanation for denying the claim of trial counsel's ineffectiveness:

> As to ground (B), Defendant alleges his counsel was ineffective for failing to challenge the sufficiency of blood drawn from Defendant at the scene of the accident. Specifically, Defendant alleges that the paramedic did not follow the proper procedure set out in Florida Administrative Code Regulation 11D-8.012(1), and that consequently, counsel should have moved to suppress the results of the blood draw.  This claim is both conclusory and speculative.

> And, the underlying premise regarding the
> sufficiency of the blood draw is conclusively
> refuted by the paramedic's deposition
> testimony. <u>See</u> Exhibits K and M (attached to
> Defendant's amended motion filed September 9,
> 2011). Because the blood was properly drawn,
> counsel did not err by failing to challenge
> its admissibility. Therefore, Defendant fails
> to show either error by counsel or prejudice.
> This claim is without merit.

Ex. K at 420-21.

The circuit court rejected this claim of ineffective assistance of trial counsel. The 1st DCA affirmed. Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has not accomplished that task.

Indeed, if there is any reasonable basis for the court to deny relief, the denial must be given deference. Here, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Ground two is due to be denied. <u>See</u> Response at 9-10.

- 19 -

Even assuming entitlement to AEDPA deference is not warranted, the claim is still without merit. The trial court's conclusion that the blood was properly drawn is fully supported by the record. Florida Administrative Code Rule 11D8.012(1), titled, "Blood Samples-Labeling and Collection" provides that "[b]efore collecting a sample of blood, the skin puncture area must be cleansed with an antiseptic that does not contain alcohol." Reply, Appendix to Brief (Doc. 19-2 at 9). However, Rule 11D-8.012(7) states: "[n]otwithstanding any requirements in Chapter 11D-8, F.A.C., any blood analysis results obtained, **if proved to be reliable**, **shall be acceptable as a valid blood alcohol level**." Reply, Appendix to Brief (Doc. 19-2 at 9). See <u>Gulliver v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:10-cv-251-J-34JRK, 2013 WL 57714, at *17 (M.D. Fla. Jan. 4, 2013) (finding no basis for exclusion of the blood tests results under the circumstances presented).

The record demonstrates that defense counsel was well-aware of the paramedic's testimony as defense counsel took the deposition "Pursuant to Notice Instance of the Defendant." Reply, Appendix to Brief (Doc. 19-2 at 1). Relying on the paramedic's testimony, the circuit court found the blood properly drawn.[6] Upon due consideration, the paramedic testified that he already had an IV in place when the highway patrolman asked him to use the blood draw kit. Ex. J at 199. Although the paramedic had used a normal

---

[6] <u>See</u> Exhibit J at 199.

alcohol swab, he was already running saline when asked to draw blood with the kit. Id. The paramedic had to resort to a second kit, using the IV site. Id. at 203. The paramedic said he wanted to get "a good, clean sample." Id. In order to ensure that the sample was not contaminated by the alcohol used to prepare Petitioner's arm before the request for the blood draw, the paramedic threw out the original 10 cc's of blood and drew another sample of blood. Id. at 199.

Therefore, Petitioner is not entitled to habeas relief on ground two as the claim has no merit.[7] Ground two is due to be denied.

## C. Ground Three

Petitioner claims he received the ineffective assistance of counsel, resulting in an involuntary plea. Amended Petition at 3. He asserts that his counsel was ineffective for failing to advise him that there was a factual defense based on the inadmissibility of the blood test results. Id.

The two-pronged Strickland standard for reviewing claims of ineffective assistance of counsel is applicable to this ground. In

---

[7] Also of note, there existed a wealth of additional evidence against Petitioner, including the paramedic's detecting the strong odor of beer and hearing Petitioner's slurred speech. Reply, Appendix to Brief (Doc. 19-2 at 3). Also, there were photographs showing that Petitioner's car crossed the lane into the oncoming vehicle, Petitioner's post-Mirandized statement in which he admitted to drinking several beers prior to driving, and finally, Petitioner's horrific driving record, including three previous DUI's and a suspended license. See Ex. A at 14.

order to satisfy the prejudice prong of the two-part <u>Strickland</u> test in a plea case, Petitioner must show that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and would have insisted on proceeding to trial. <u>See</u> <u>Hill v. Lockhart</u>.

It is also noteworthy that this claim hinges on the assertion that the blood alcohol test would have proved to be inadmissible if counsel had developed and pursued the defense strategy of attacking the blood draw. Of import, the circuit court concluded otherwise. It found the blood properly drawn; therefore, "counsel did not err by failing to challenge its admissibility." Ex. K at 421. As to the claim that counsel failed to investigate and develop this defense strategy, the circuit court referenced the plea colloquy and Petitioner's expressed satisfaction with counsel's advice and representation. <u>Id</u>. Here, it appears that Petitioner is trying to go behind his sworn plea representations. This he cannot do.

It also evident that Petitioner is attempting to challenge a matter that did not occur contemporaneously with the plea. The existence of an alleged antecedent constitutional infirmity is not a proper subject for federal habeas corpus review and is foreclosed by the voluntary plea of nolo contendere:

> Petitioner raises matters occurring prior to entry of his nolo contendere plea, rather than matters occurring contemporaneously with the plea. The scope of federal habeas inquiry in Petitioner's case is limited to whether his plea was voluntarily and intelligently made, and this Court is precluded from inquiring

into any antecedent constitutional
infirmities. See Tollett,[8] 411 U.S. at 266.
Thus, Petitioner's ineffective assistance of
counsel claims are not reviewable by this
Court.

However, even if Petitioner did not waive
any aspect of Ground One when he entered his
nolo contendere plea, he still would not be
entitled to the relief he seeks. He fails to
meet his burden under the AEDPA standards
governing review of the state decision. The
state record conclusively establishes that
Petitioner understood the charges against him
and the consequences of his plea, including
the waiver of his constitutional rights, and
that he voluntarily chose to plead without
being coerced to do so.

Harter v. Sec'y, Dep't of Corr., No. 8:08-CV-202-T-27EAJ, 2011 WL

761546, at *16 (M.D. Fla. Feb. 24, 2011) (finding the petitioner's

claims of ineffective assistance of counsel with regard to

petitioner's decision to plead nolo contendere reasonably

rejected).

Finally, and alternatively, even if Petitioner did not waive

his claim by pleading nolo contendere, he would still not be

entitled to habeas relief. The circuit court found that

Petitioner's "underlying premise regarding the sufficiency of the

blood draw is conclusively refuted by the paramedic's deposition

testimony." Ex. K at 420. See Ex. J at 199 (concerned about the

use of the alcohol wipe, the paramedic attested that in order to

avoid contamination of the blood, he drew 10 cc's of blood and

threw it out, and then drew another 10 cc's of blood). With the

---

[8] Tollett v. Henderson, 411 U.S. 258, 266 (1973).

circuit court finding the blood-draw evidence reliable and admissible, any objection made by Petitioner would have gone to weight, not admissibility. See Response at 11.

Under these circumstances, Petitioner has failed to establish that the state court's denial of these claims was either contrary to, or an unreasonable application of federal law, or was based on an unreasonable determination of the facts. Based on the record before the Court, Petitioner has failed to show that his counsel's performance was deficient or that he entered an involuntary plea. Even assuming deficient performance, Petitioner has not shown prejudice.[9] Thus, he has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance or prejudice.

Petitioner is not entitled to relief on ground three of the Amended Petition, the claim of ineffective assistance of trial counsel resulting in an involuntary plea. Deference, under AEDPA, should be given. Petitioner claimed he received the ineffective assistance of trial counsel in his Rule 3.850 motion. The circuit court denied this contention, and the appellate court affirmed the

_____

[9] Of import, Petitioner was facing substantial time - thirty-one years. Also, he was charged with his fourth DUI, a felony.

circuit court's decision.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill, or based on an unreasonable determination of the facts.  In conclusion, ground three, Petitioner's claim of ineffective assistance of counsel resulting in an involuntary plea, is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 7) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Amended Petition, **the Court denies a certificate of appealability.**[10]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of June, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 6/20
c:
James Harold Chadwick, II
Counsel of Record